**JOY TECHNOLOGIES, INC., Plaintiff,**

v.

**Donald J. QUIGG, Defendant.**

**Civ. A. No. 88–3656–OG.**

United States District Court, District of Columbia.

March 12, 1990.

Raymond G. Hasley, Michael Kushnick, Rose, Schmidt, Hasley & DiSalle, Pittsburgh, Pa., for plaintiff.

Lee Barrett, Nancy Slutter, Arlington, Va., for Com'r of Patents and Trademarks.

## MEMORANDUM

BENNETT, Senior Circuit Judge.[*]

This patent case is before the court on the summary judgment motion of the defendant Commissioner of Patents and Trademarks. The motion is denied because genuine issues of material fact exist concerning the objective indicia of nonobviousness. It appears from the parties' submissions that the plaintiff has failed to raise a genuine issue as to many of the other facts essential to deciding the case as a matter of law. Therefore, pursuant to Fed.R. Civ.P. 56(d), those facts shall be deemed established. They are identified in the Memorandum and are set forth in the order issued today.

### I. Background

Joy Technologies, Inc. (Joy), is the assignee of U.S. Patent 4,042,864 (the '864 patent), which issued August 16, 1977, and named Melvin N. Norris as inventor. The patent includes 18 claims directed to an AC–DC traction drive control system for a mining machine, a mining machine embodying that system, and methods of operating such a machine.

On August 23, 1985, a business competitor of Joy's, National Mine Service Company (NMS), requested reexamination of the '864 patent by the Patent and Trademark Office (PTO). The PTO determined that substantial new questions of patentability existed and that the patent should be reexamined. The patent examiner rejected claims 1 to 4, 11, 12, 16, and 18 under 35 U.S.C. § 102 (1982) (lack of novelty) and section 103 (obviousness). Joy appealed to

[*] Marion T. Bennett, Senior Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation. 28 U.S.C. § 294(d) (1982).

the Board of Patent Appeals and Interferences (Board). On October 31, 1988, the Board rendered its decision, reversing the section 102 rejection but affirming the section 103 rejection.

Joy filed this suit against the Commissioner of Patents and Trademarks (Commissioner) under 35 U.S.C. § 145 (1982), which creates a remedy by civil action for patentees and applicants dissatisfied with the decision of the Board. This court (Gasch, J., presiding) granted the Commissioner's partial summary judgment motion to dismiss Joy's claims relating to the PTO's exercise of discretion in initially granting the reexamination and the alleged unconstitutionality of reexamination proceedings, as well as to strike Joy's request for a jury trial. 12 USPQ2d 1112, 1989 WL 150027 (D.D.C.1989). Thereafter, the Commissioner filed the present motion for summary judgment that the invention of the '864 patent would have been obvious under section 103 and that the decision of the Board was correct.

II. *The Standards for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for granting summary judgment. "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

Rule 56 further provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). The Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). The nonmoving party must do more than merely raise some doubt as to the existence of a fact; the nonmoving party must present evidence sufficient to require submission of the issue to the trier of fact. *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560, 7 USPQ2d 1548, 1550 (Fed.Cir.1988).

As the Federal Circuit has held, "[w]ith respect to whether there is a genuine issue, the court may not simply accept a party's statement that a fact is challenged. The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient." *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835–36, 221 USPQ 561, 564 (Fed.Cir.1984). *See also Russell v. Commissioner of Patents & Trademarks*, 695 F.Supp. 572, 573, 8 USPQ2d 1452, 1453 (D.D.C.1988).

While the nonmovant must come forward with some evidence showing that there is a genuine issue of material fact, the established facts, as well as any inferences reasonably drawn from those facts, must be viewed in a light most favorable to the nonmovant. *Barmag Barmer*, 731 F.2d at 836, 221 USPQ at 564.

Finally, Rule 56(d) provides that if summary judgment is not rendered on the

whole case and a trial is necessary, the court may make an order specifying the facts that appear without substantial controversy. Upon trial of the action, the facts so specified shall be deemed established. Fed.R.Civ.P. 56(d).

In this case, Joy has failed to show that there are genuine issues with respect to most of the facts of this case. The Commissioner's motion for summary judgment sets forth in great detail the material facts relevant to the obviousness question. The motion is well supported by the reexamination record. By contrast, Joy's opposition relies primarily on unsupported allegations of its attorneys and on conclusory denials and statements of its affiants. Thus, as to most of the facts of this case, Joy has failed to show there are triable issues. Nevertheless, it appears from the record and from the evidence Joy has submitted that there are genuine issues relating to the "secondary considerations" of nonobviousness. Therefore, summary judgment on the entire case is inappropriate.

■ Joy argued in its motion papers that summary judgment would deny its right under 35 U.S.C. § 145 to supplement the reexamination record with additional evidence. Joy also argues that this case involves a highly technical subject where explanatory testimony is necessary. The Federal Circuit has made it clear that summary judgment is appropriate in patent cases, as in any other case. *Barmag Barmer*, 731 F.2d at 835, 221 USPQ at 564. Moreover, Joy is not "deprived" of a trial where the Commissioner has submitted evidence supporting its position on the relevant issues, and Joy has failed to identify evidence sufficient to create a triable issue of material fact. *See Avia Group*, 853 F.2d at 1560–61, 7 USPQ2d at 1551. Joy has every right in this proceeding to supplement the reexamination record with additional evidence, whether at trial or in opposing a motion for summary judgment. Where it fails to provide evidence, including such supplemental evidence, so as to create a triable issue, summary judgment is appropriate.

## III. *The Patent at Issue*

The '864 patent relates to an AC–DC traction drive control system for a coal mine shuttle car. Shuttle cars are used in coal mines to transfer the material being mined from the work area to an unloading area, where conveyor belts or cars transfer the material out of the mine. Because it is desirable to excavate only the coal seam, rather than the rock surrounding the coal seam, the shuttle car must often operate in a limited space. In addition, the coal mine is often an explosive environment, and legal restrictions limit the type of electrical circuitry that can be used on the shuttle car.

As described in the Joy patent, prior art shuttle cars are of two types, namely, the AC type and the DC type. AC type shuttle cars are powered by alternating current (AC) supplied by a trailing cable. They utilize AC motors for driving the wheels of the car. DC type shuttle cars utilize direct current (DC) supplied by a trailing cable to power DC drive motors. Each of the types of prior art shuttle cars has a number of advantages and disadvantages.

The shuttle car described in the Joy patent has a machine body and four steerable wheels. The wheels are separately driven by DC traction motors. Electrical power is supplied to the car by means of a trailing cable. The power supply is three phase alternating current (AC). The shuttle car includes conversion circuitry for converting the AC to DC in order to power the traction motors. The patent drawings and specification describe in detail the conversion circuitry; however, the circuitry is broadly claimed in the independent claims. Briefly, the incoming AC is applied to the primary windings of a transformer. The AC output from the secondary windings of the transformer is rectified to DC and applied to the traction motors.

The shuttle car described in the patent includes a control means which permits the transformer to be selectively activated in different winding configurations to provide different levels of output to the traction motors. The shuttle car may include auxil-

iary motors, such as a pump motor for the hydraulic system and a conveyor motor for operating the conveyor on the shuttle. The auxiliary motors may be powered by a portion of the AC from the trailing cable.

The three independent claims, as amended in the reexamination proceeding, are as follows:

1. A steerable mobile machine energized through a trailing cable for use in forming a passageway by mining and hauling coal from an underground seam, such as a mined material transporting shuttle car, comprising a machine body, a plurality of surface engaging means carried by said body and relatively movable with respect thereto and continuously engaging the ground, at least one DC traction motor carried by said body and cooperable with at least some of said surface engaging means to cause movement thereof, steering means carried by said body for selectively controlling said surface engaging means to move said machine body in a selected path, conversion means carried by said body for converting a three phase AC input to an electrical DC output, control means carried by said body for controllably applying said DC output to said DC traction motor, and a flexible trailing cable connected to said conversion means for selectively supplying said three phase AC input to said conversion means.

16. In a control drive system for a steerable wheeled vehicle energized through a trailing cable, for use in forming a passageway by mining and hauling coal from an underground seam, such as a mined material transporting shuttle car operative between a work area and a station point which is supplied with three phase AC via said cable connected between a source of three phase AC at said station point and said vehicle, said vehicle being driven by at least one DC traction motor, the combination of: conversion means carried by said vehicle for converting said AC from said cable to DC, said conversion means including transformer means having primary and secondary windings responsive to the AC from said cable for providing a three

phase AC output; rectifier means responsive to the AC output of said transformer means for providing said DC; and control means for controllably applying said DC from said conversion means to said traction motor for controllably driving said vehicle; said control means operative to control the output of said transformer means to said conversion means by selection of one of a plurality of different configurations of said secondary windings so that the degree of energization of said traction motor is selectively controlled for acceleration of said vehicle.

18. A method of operating a mobile machine of the type which is driven by traction motors electrically energized through a trailing cable in an underground passageway of a mine in which mining operations are conducted, comprising the steps of: selectively reeling and unreeling said trailing cable with respect to said machine as required during movement of said machine through selectable paths spaced from said source and with some paths of said selectable paths constituting random paths; converting at the machine end of said trailing cable at least a portion of a three phase AC input to a DC output; and selectively energizing at least the traction motors of said mobile machine by said DC output.

Several of the claim limitations are written in the "means plus function" format. Under 35 U.S.C. § 112, ¶ 6, those "means" for performing the function are construed to cover the corresponding structure described in the specification and equivalents thereof.

The '864 patent includes several dependent claims. Joy has not argued the patentability of those claims separate from the independent claims, either in the reexamination or in this proceeding. Thus, the dependent claims stand or fall with the independent claims. *In re Nielson*, 816 F.2d 1567, 1572, 2 USPQ2d 1525, 1528 (Fed. Cir.1987).

**232**

IV. *The Board's Decision*

The Board affirmed the examiner's rejection of claims 1–4, 11, 12, 16, and 18 as obvious under 35 U.S.C. § 103. The claims were rejected over the patentee's discussion of the prior art shuttle cars in his patent and the references relating to the P & H mining shovel. The Board stated that the artisan would have been strongly motivated to combine the prior art AC and DC types of shuttle cars into a hybrid system based on the patentee's thorough discussion of the advantages and disadvantages of each system. The P & H shovel references show the conversion of three phase AC to DC through use of transformers and rectifiers for application to DC motors. According to the Board, the P & H shovel would have shown to the artisan that such a hybrid system was viable in an underground mining environment because the P & H shovel was in reality in an aboveground mining environment.

The claims were also rejected as unpatentable under section 103 over the patentee's admissions, French Brevet d'Invention No. 1,152,782 (the French patent), U.S. Patent No. 2,599,061 to Lee (the Lee patent), and U.S. Patent No. 2,434,585 to Renshaw (the Renshaw patent). According to the Board, the French patent shows an AC–DC conversion system on board an electric locomotive. The patent shows various taps available on the secondary windings of a transformer utilized for controlling the speed of DC traction motors. The Board observed that the patentee had admitted in the prosecution that mine locomotives are old in the art and work side by side with the shuttle cars underground. The Board held that the teachings of the French patent, together with the advantages and disadvantages of the AC and DC shuttle cars, would have led the artisan to conclude that it would have been obvious to utilize the teachings to combine the AC and DC systems into a hybrid control system. According to the Board, the Lee and Renshaw patents provide cumulative teachings as to the obviousness of the claims rejected. Those patents relate, respectively, to a shuttle car with a cable reel and an electric mine locomotive which may utilize a cable

reel. Claim 16 was rejected over the additional reference to the Muskingum Electric Railroad article, which, according to the Board, shows a conversion means having a transformer with primary and secondary windings and an associated rectifier means with the capability to select among a plurality of configurations of the secondary windings. In the motion for summary judgment, the Commissioner has also cited other references.

V. *The Obviousness Issues*

■ The Commissioner's motion seeks summary judgment that the claims at issue are obvious under 35 U.S.C. § 103. That section provides, in relevant part, that a patent on an invention may not be obtained

> if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

As set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966), four factual inquiries must be made in the obviousness determination: (1) the scope and content of the prior art; (2) the differences between the prior art and the claimed invention; (3) the level of ordinary skill in the art; and (4) the "secondary considerations" which may serve as objective indicia of nonobviousness, such as commercial success, unexpected results, and failure of others who have tried to solve the problem. The ultimate obvious-nonobvious question is one of law, but the underlying inquiries that must be made are questions of fact. *See Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1566–68, 1 USPQ2d 1593, 1595–97 (Fed.Cir.), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987).

A. Scope and Content of the Prior Art

The first factual inquiry under the *Graham* test is the determination of the scope and content of the prior art. The "scope" of the prior art determines what references fall within the relevant prior art that can

be applied to reject a claim. The "content" of the prior art is what those references teach a person of ordinary skill in the art.

### 1. *Scope of the Prior Art*

[3] A reference is analogous, and within the scope of prior art that may be considered, if it is either within the inventor's field of endeavor or reasonably pertinent to the particular problem with which the inventor was involved. *In re Deminski,* 796 F.2d 436, 442, 230 USPQ 313, 315 (Fed.Cir. 1986); *In re Wood,* 599 F.2d 1032, 1036, 202 USPQ 171, 174 (CCPA 1979).

The Commissioner relies on three areas of art to invalidate the Joy patent: mine shuttle car technology, aboveground mine shovel technology (the P & H shovel references), and locomotive technology (the French and Renshaw patents and the Muskingum railroad article). The shuttle car references are unquestionably within the inventor's field of endeavor, and Joy does not challenge their applicability.

In support of his position that the P & H shovel is analogous art under the *Wood* analysis, the Commissioner relies on a statement that Joy made during the prosecution of the patent application and the inventor's statement of the field of his invention. Joy's prosecution attorneys stated, "Applicant hereby advises the Examiner that pertinent art may possibly reside in the field of power excavators." Ex. 4 at 0964, amendment filed Dec. 28, 1976. The Commissioner cited the *Standard Handbook for Electrical Engineers* to show that shovels such as the P & H shovel are power excavators. In addition, the inventor, in his patent, described the field of his invention (Ex. 4 at 0054, '864 patent at col. 1, lines 12–16):

> The present invention relates to a control drive system for a vehicle operating between two points and, more particularly, to a control drive system wherein AC is converted to DC aboard the vehicle for energizing the drive means of the vehicle.

The Commissioner points out that both the P & H shovel and the locomotives which convert AC to DC are within that broadly defined field of the invention, or at least reasonably pertinent to the problem of electrical control drive systems. According to the Commissioner, aboveground machines may require modification to operate in an underground environment, but a person of ordinary skill in the art may refer to the aboveground machines in looking for a solution to the electric drive problem. *See In re Deminski,* 796 F.2d at 442, 230 USPQ at 315 (pumps are analogous to compressors because both are within the field of endeavor of horizontally reciprocating, double-acting piston devices for moving fluids); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1535, 218 USPQ 871, 876 (Fed.Cir. 1983) (rubber hose art was analogous to PTFE tubing because reasonably pertinent to the search for a solution to the problem of preventing electrostatic buildup in the tubing; the inventor referred to the art when he began his search for a solution).

With respect to the locomotive technology, the Commissioner cited a statement made by Joy during the reexamination:

> One kind of main haulage use in underground coal mining for years is by the electric locomotive. Electric locomotives and shuttle cars have existed side by side in coal mines since the inception of shuttle cars in the 1940's. In all that period of time no one, until the instant invention, perceived that an AC–DC shuttle car could be provided.

Ex. 4 at 0866, Brief for Appellant dated July 8, 1987. The Commissioner pointed out that the statement that locomotives and shuttle cars exist side by side is essentially an admission that they are analogous. Both electric drives operate in the same environment and both the locomotives and the shuttle cars are haulage vehicles.

Joy's response includes the conclusory statement that "oral testimony ... will establish the field of endeavor was limited to underground shuttle cars." Joy asserts that technology relating to aboveground shovels and locomotives is entirely too large and unsafe for use on a shuttle car or other underground mining machine. In response to the Commissioner's citation of the inventor's statement of the field of his invention, Joy asserts that "[t]he invention

234

of the patent is defined in the claims." Joy asserts that locomotive technology is not reasonably pertinent unless the locomotives travel in random paths in an explosive underground environment and that the P & H shovel is not reasonably pertinent because it does not teach or suggest a traction drive for a shuttle car.

Joy has failed to raise any issue of material fact concerning the scope of the prior art. The Commissioner has submitted evidence showing that the inventor and his attorneys considered excavating equipment and locomotives to be pertinent to the '864 invention. Indeed, the inventor broadly defined his invention as relating to a control drive system for a vehicle operating between two points. The Commissioner has shown that one of ordinary skill in the art would refer to excavating equipment and locomotive technology in looking for solutions to the problem of electric motor drives on underground mine shuttle cars. Joy's statements, while pointing to differences between shovel and locomotive technology and the shuttle car, do not raise any issue of fact concerning whether those technologies are reasonably pertinent to the problem faced by the inventor. *See Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 1572, 220 USPQ 584, 588–89 (Fed.Cir.1984) (affirming the grant of summary judgment where the patentee's affidavit contained unsupported, conclusory opinions which ignored the evidence of what the applicant had considered pertinent prior art). *See also Gallagher v. Quigg,* 8 USPQ2d 1437, 1439, 1989 WL 4478 (D.D.C. 1988).

### 2. Content of the Prior Art

The Commissioner has set forth at length the teachings of the various references on which he relies in arguing that the invention of the '864 patent is obvious. Commissioner's Memorandum at 14–23 in support of his motion. The Commissioner's evidence is supported by extensive citations to the reexamination record.

In the '864 patent, the inventor described in detail the advantages and disadvantages of the prior art AC and DC shuttle cars. According to the inventor, his AC–DC shuttle car takes advantage of all the desirable features of the DC system while introducing none of the disadvantages of either the DC or AC systems. While Joy challenges the Commissioner's position that the advantages and disadvantages of the prior art systems were known in the art, Joy makes no attempt to show how evidence would refute that position.

Moreover, the Commissioner has submitted several prior art patents that recognize the advantages and disadvantages of AC and DC propulsion systems. U.S. Patent No. 3,257,597 to Weiser recognized that AC traction motors were considerably more bulky and less efficient than DC motors. The reference recognizes that various attempts have been made to convert AC input to DC output in the electric locomotive field "to combine the advantages of an A.–C. type power distribution system with a D.–C. type propulsion system." The Alexanderson patent, U.S. Patent No. 2,549,405 recognizes that DC drive motors are advantageous because of their easily obtainable variable speeds, but for long-distance trolley locomotives, AC is advantageous because of the ease with which voltages may be increased for power transmission and decreased for utilization. The article by Barnes, *Mining with a-c power,* Mechanization, October 1960, sets forth many reasons for the trend toward AC mining from DC mining, including increased efficiency of power transmission.

The P & H shovel references show most of the elements of the independent claims of the '864 patent, albeit in a surface mine loader rather than in an underground shuttle car. The P & H shovel has a DC traction motor and a three phase AC power supply rectified in controllable amounts for application to the DC motor. The power conversion system of the P & H shovel includes a transformer with a three phase AC output. The AC is rectified to DC using "thyristors" or silicon controlled rectifiers. A portion of the AC power supply is diverted for application to AC auxiliary equipment.

The French patent similarly shows most of the elements recited in the independent

claims, although on a fixed wheel rail vehicle rather than a steerable shuttle car. The locomotive of the French patent has an AC–DC conversion system, in which a single phase AC power supply is converted in controllable amounts for application to a DC motor. The conversion system includes a transformer and rectifiers. The output of the conversion system is controlled by selecting different configurations of transformer windings.

The Renshaw patent shows an electric locomotive energized by either a trolley conductor or a cable reel. The Sessions patent (U.S. Patent No. 1,123,602) shows a coal mine locomotive with a cable reel. The Lee patent shows a prior art shuttle car, which is powered through use of a cable reel. The Muskingum railroad article shows an AC–DC conversion system for use on an aboveground electric railroad. The article shows that the output from the conversion system transformer can be controlled in a step-by-step fashion using switches which select different secondary windings of the transformer. The Commissioner has cited a number of other references that contain similar teachings.

■ The evidence the Commissioner has submitted consists of the reexamination record and references. The references are addressed to the problems of AC–DC propulsion systems and shuttle car drives. The teachings of the references are evident from the references themselves. The references show the state of the art at the time the Norris invention was made. This case is thus distinguishable from *Cooper v. Ford Motor Co.*, 748 F.2d 677, 223 USPQ 1286 (Fed.Cir.1984), in which the patentee had pointed out a reasonable interpretation of the references showing how they did not teach his invention and how they did not address the problem he faced.

In its response, Joy has put forth several arguments challenging the Commissioner's evidence of the content of the prior art. None of the arguments raises any genuine issue of fact. Joy states that "unless the parties agree with what a reference teaches, then for the [c]ourt to resolve the dispute would require that a finding of fact be made...." Supplemental Response at 2. However, Joy cannot successfully oppose a motion for summary judgment by simply denying the facts set forth by the Commissioner or by making conclusory statements. *See Barmag Barmer*, 731 F.2d at 835–36, 221 USPQ at 564.

The primary basis for Joy's opposition respecting the content of the prior art is its assertion that the P & H mining shovel and the electric locomotives are too large or dangerous to use in the environment of the shuttle car. Joy states that they cannot be modified to operate as shuttle cars, and their electrical circuitries cannot be used on a shuttle car. The affidavit of the inventor Norris states that none of the prior art discloses electrical components that can be used on the shuttle car due to size or other restrictions. Supplemental Memorandum, Norris Affidavit at 8–10. The Kelley affidavit states that the machines disclosed in the references cited by the Commissioner are not suitable for use in the working face area where the shuttle cars operate. Supplemental Memorandum, Kelley Affidavit at 3. The Warner report states that the P & H shovel is a loader, not a haulage vehicle, and it cannot be used underground or scaled down to operate as a shuttle car. Ex. 4 at 0551–52, Warner Report. The Price affidavit, also, states that the P & H shovel cannot be adapted practically to perform as an underground mining machine. Ex. 4 at 0523–27, Price Affidavit.

The evidence Joy has submitted, while pointing to differences between the prior art and the '864 shuttle car, does not raise any issue of material fact concerning the content of the prior art. The fact that the P & H shovel and the electric locomotives cannot be used as a shuttle car does not mean those references cannot be used in the obviousness determination.

The Federal Circuit has rejected similar arguments regarding the applicability of prior art that is not physically combinable. In *In re Sneed*, 710 F.2d 1544, 1550, 218 USPQ 385, 389 (Fed.Cir.1983), the court stated "[a]ppellants argue that Nelson should not be considered because it deals with collapsible hose rather than flexible

plastic pipe and teaches that rolling 600 feet of 4 inch, noncollapsible hose into a transportable bundle is virtually 'an insurmountable task.' What appellants overlook is that it is not necessary that the inventions of the references be physically combinable to render obvious the invention under review." *See also In re Keller*, 642 F.2d 413, 425, 208 USPQ 871, 881 (CCPA 1981) ("The test for obviousness is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference; .... Rather, the test is what the combined teachings of the references would have suggested to those of ordinary skill in the art."). In this case, it is not necessary that the P & H shovel and the electric locomotives, or their electrical components, be utilizable *per se* in an underground coal mine for those references to serve as prior art for all that they teach.

In addition, the independent claims of the '864 patent do not recite the elements that allegedly make the shuttle car operable in the underground mining environment. Limitations cannot be read into the claims to overcome validity challenges. *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433–34, 7 USPQ2d 1129, 1131–32 (Fed.Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988). Moreover, whatever "problems" faced by Joy in designing a shuttle car operable under the size and legal restrictions of the underground coal mining environment, the patent makes it clear that the invention was directed to the problem of overcoming the disadvantages of the prior art AC and DC shuttle cars. Ex. 4 at 54–55, '864 patent at col. 1, line 33 to col. 2, line 24. *Cf. In re Wright*, 848 F.2d 1216, 6 USPQ2d 1959 (Fed.Cir.1988).

### B. The Differences Between the Prior Art and the Claimed Invention

The Commissioner has pointed to several differences between the prior art discussed above and the claimed invention. The Commissioner states that the prior art DC shuttle cars did not have the transmission of AC power through the trailing cable and did not convert AC to DC on the shuttle car. The prior art AC shuttle cars did not convert the AC to DC on the shuttle car and utilized AC traction motors rather than DC motors. With respect to claim 16, the prior art shuttle cars did not show the particular means for converting AC to DC in a step-by-step fashion. Several of the prior art references show the conversion of single phase AC rather than three phase AC.

Joy, in its response, states without evidentiary support that "the differences between the claims and the prior art resides [sic] in the structure and method as defined in the claims." Supplemental Memorandum at 10. Joy also states that the differences go well beyond the differences set forth by the Commissioner due to size restrictions and operating conditions of the shuttle cars. Joy also asserts that none of the references teach or suggest a traction drive for a shuttle car. This last assertion is incredible in view of the number of shuttle car references cited by the Commissioner.

There is no genuine issue concerning the differences between the claimed invention and the prior art. As discussed above with respect to the scope and content of the prior art, the P & H shovel and the electric locomotives are allegedly unsuitable for use as a shuttle car operating underground in an explosive environment. However, those differences are not inconsistent with those set forth by the Commissioner. All such differences are to be considered in the ultimate determination of whether the claimed invention would have been obvious in view of the prior art.

### C. The Level of Ordinary Skill in the Art

The Commissioner asserts that in this case, a specific finding of the level of ordinary skill in the art is not required. Rather, the cited references reflect the appropriate level. *See Chore–Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 779 n. 2, 218 USPQ 673, 676 n. 2 (Fed.Cir.1983). Joy states that the level of ordinary skill in the art is evidenced by persons having knowl-

edge of the operating conditions for shuttle cars.

There is no genuine issue concerning the level of skill in the art. While the rule the Commissioner cites is applicable in cases where the subject matter is easily understandable (*see Chore–Time* (poultry feeders)), the subject matter of the patent at issue is technically complex. However, the claim elements are recited in general terms (e.g., conversion means), and the particular electrical circuitry is not claimed. Therefore, the references cited can be used to reflect the appropriate level of skill in the art, with the added provision, as Joy asserts, that one skilled in the art would have knowledge of the operating conditions for shuttle cars.

D. Objective Indicia of Nonobviousness

■ As the Federal Circuit has stated, "evidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness. Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not." *Stratoflex*, 713 F.2d at 1538, 218 USPQ at 879 (citations omitted). Summary judgment of obviousness is inappropriate where issues of fact exist concerning the secondary considerations. *Finish Eng'g Co. v. Zerpa Indus., Inc.*, 806 F.2d 1041, 1 USPQ2d 1114 (Fed.Cir.1986). Even though the references cited are such that the invention may at first appear to be obvious, the objective indicia of non-obviousness may be sufficient to compel a contrary result. *See Alco Standard Corp. v. Tennessee Valley Authority*, 808 F.2d 1490, 1499–1501, 1 USPQ2d 1337, 1344–45 (Fed.Cir.1986), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987); *Burlington Indus., Inc. v. Quigg*, 229 USPQ 916 (D.D.C.1986), *aff'd*, 822 F.2d 1581, 3 USPQ2d 1436 (Fed. Cir.1987).

In this case, there is a variety of evidence pertaining to the "secondary considerations" of nonobviousness. In the reex-amination proceeding Joy submitted an announcement by National Mine Service (NMS), a competitor, showing that that company had standardized its line of shuttle cars to an AC–DC drive. Joy also submitted a memorandum prepared by an NMS engineer soon after the introduction of the Joy AC–DC shuttle car disputing the alleged superiority of the Joy car. The Warner affidavit (Ex. 4 at 0542–43) asserts that when the patented shuttle car was introduced, many people in the mining industry ridiculed Joy for combining what they considered the disadvantages of the AC and DC shuttle cars. *See also* Boyd Affidavit, Ex. 4 at 0598; Schrock Affidavit, Ex. 4 at 0613. Joy submitted sales data showing that, while initial sales of the AC–DC shuttle cars were slow, by 1975, Joy's sales had increased to 186 units annually. (Ex. 4 at 0570). This figure apparently represents a not insignificant percentage of the total shuttle car market. *See* Ex. 4 at 0583 (total market in 1979 was 667 units). Most telling is a Harvard Business School report, which states, "Until the mid–1970's, NMS was the market leader, but Joy's development of an AC/DC power drive had moved Joy into the market lead." Ex. 4 at 0583. *See also* Blutreich Deposition, Ex. 4 at 0751 (NMS perceived a need to develop an AC–DC shuttle car in 1976 to gain market share).

In arguing that there is no genuine issue of material fact, the Commissioner primarily asserts that there is no nexus between the evidence of the secondary considerations and the claimed invention. Such a nexus is required for the evidence to be given substantial weight in the obviousness determination. *Stratoflex*, 713 F.2d at 1539, 218 USPQ at 879. However, the Commissioner has not met his burden to prevail on summary judgment. The Federal Circuit has indicated that a prima facie case of nexus is made out when the patentee shows both that there is commercial success and that the thing that is commercially successful is the invention disclosed and claimed in the patent. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392, 7 USPQ2d 1222, 1226 (Fed. Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct.

395, 102 L.Ed.2d 383 (1988). In this case, a reasonable inference of commercial success can be drawn from the evidence of record. Moreover, what was commercially successful was apparently the AC–DC shuttle car claimed by the '864 patent.

The evidence of record is sufficient to create an inference that Joy's patented AC–DC shuttle car was met with initial skepticism by the industry, but later was commercially successful. Such an inference is sufficient at this stage to overcome the Commissioner's motion for summary judgment. Whether in fact there is a nexus between the evidence and the claimed invention and, if so, the weight to be accorded the evidence remain issues for trial.

## VI. *Conclusion*

For the reasons stated, the Commissioner's motion for summary judgment of obviousness is denied. Pursuant to Rule 56(d), the facts relating to the scope and content of the prior art, the level of ordinary skill in the art, and the differences between the claimed invention and the prior art are deemed established in accord with this Memorandum. Trial will be limited to the factual issues relating to the objective indicia of nonobviousness.

## ORDER

Upon consideration of defendant's Motion for Summary Judgment and accompanying Memorandum in Support, plaintiff's Opposition and Supplemental Memorandum, and defendant's Reply, and for the reasons set forth in the accompanying Memorandum, it is by the court this 12th day of March, 1990,

ORDERED that the defendant's motion is denied, and it is further

ORDERED that the following facts appear without substantial controversy, and such facts shall, on trial of this action, be deemed established:

### A. *Background*

1. U.S. Patent 4,042,864 (the '864 patent) issued August 16, 1977, to Joy Technologies, Inc. (Joy), as assignee of the inventor Melvin N. Norris.

2. On reexamination of the '864 patent, the Board of Patent Appeals and Interferences (Board) affirmed the reexamination examiner's rejection of claims 1 to 4, 11, 12, 16, and 18 under 35 U.S.C. § 103 (1982 & Supp. V 1987) as obvious. Joy has filed this action under 35 U.S.C. § 145 (1982), which creates a remedy by civil action for patentees dissatisfied with the decision of the Board.

3. The '864 patent relates to an AC–DC traction drive control system for a coal mine shuttle car. The shuttle car has a machine body and four steerable wheels. The wheels are separately driven by DC traction motors. Electrical power is supplied to the car by means of a trailing cable which supplies three phase AC. The car includes conversion circuitry for converting AC to DC in order to power the traction motors. The AC is applied to the primary windings of a transformer. AC output from the transformer secondary windings is rectified to DC and applied to the traction motors. The shuttle car includes a control means which permits the transformer to be selectively activated in different winding configurations to provide different levels of output to the traction motors. The '864 patent includes three independent claims.

4. Shuttle cars must operate in a limited space in the underground coal passageways. In addition, the coal mine is often an explosive environment, and legal restrictions limit the type of electrical circuitry that can be used on the shuttle car.

5. The Joy patent describes two types of prior art shuttle cars. AC type shuttle cars are powered by alternating current and utilize AC drive motors. DC type shuttle cars are powered by direct current and utilize DC drive motors.

### B. *Scope of the Prior Art*

6. The '864 patent describes the invention as relating "to a control drive system for a vehicle operating between two points and, more particularly, to a control drive system wherein AC is converted to DC

aboard the vehicle for energizing the drive means of the vehicle." '864 patent at col. 1, lines 12–16.

7. Shuttle cars are within the inventor's field of endeavor.

8. During the prosecution of the patent application, Joy's prosecution attorneys advised the examiner that pertinent art may possibly reside in the field of power excavators. Amendment filed Dec. 28, 1976.

9. The *Standard Handbook for Electrical Engineers* shows that shovels, such as the P & H mine shovel, are power excavators.

10. During the reexamination, Joy stated that "[e]lectric locomotives and shuttle cars have existed side by side in coal mines since the inception of shuttle cars in the 1940's." Brief for Appellant dated July 8, 1987. Electric drives on both the locomotives and on shuttle cars operate in the same environment, and both are haulage vehicles.

11. The P & H shovel references and the electric locomotive references are reasonably pertinent to the control drive system problem faced by the inventor.

12. The P & H shovel references, the electric locomotive references, and the prior art shuttle cars are analogous art.

C. *Content of the Prior Art*

13. The Joy patent describes the advantages and disadvantages of AC and DC shuttle cars.

14. U.S. Patent No. 3,257,597 to Weiser recognized that AC traction motors were considerably more bulky and less efficient than DC motors. The reference recognizes that various attempts have been made in the electric locomotive field to convert AC input to DC output to combine the advantages of an AC power distribution system with a DC propulsion system.

15. U.S. Patent No. 2,549,405 recognizes that DC drive motors are advantageous because of their easily obtainable variable speed, but for long-distance trolley locomotives, AC is advantageous because of the ease with which voltages may be increased for power transmission and decreased for utilization.

16. The article by Barnes, *Mining with a-c power*, Mechanization, October 1960, sets forth many reasons for the trend toward AC mining from DC mining, including increased efficiency of power transmission.

17. The P & H shovel references relate to a surface mine loader. The shovel has a DC traction motor and a three phase AC power supply rectified in controllable amounts for application to the DC motor. The power conversion system includes a transformer with a three phase AC output. The AC is rectified to DC using thyristors, or silicon controlled rectifiers.

18. French Brevet d'Invention No. 1,152,782 (the French patent) relates to a fixed wheel rail vehicle. The locomotive has an AC–DC conversion system, in which a single phase AC power supply is converted in controllable amounts for application to a DC motor. The conversion system includes a transformer and rectifiers. The output of the conversion system is controlled by selecting different configurations of transformer windings.

19. U.S. Patent No. 2,434,585 to Renshaw shows an electric locomotive energized by either a trolley conductor or a cable reel.

20. U.S. Patent No. 1,123,602 to Sessions shows a coal mine locomotive with a cable reel.

21. U.S. Patent No. 2,599,061 to Lee shows a prior art shuttle car, which is powered through use of a cable reel.

22. The article by J. Oliver, et al., *Electric Locomotives for the Muskingum Electric Railroad*, IEEE Conference Record of 1968 Third Annual Meeting of the IEEE Industry and General Applications Group, Sept.–Oct. 1968, shows an AC–DC conversion system for use on an aboveground electric railroad. The article shows that the output from the conversion system transformer can be controlled in a step-by-step fashion using switches which select different secondary windings of the transformer.

240

### D. *Differences Between the Prior Art and the Claimed Invention*

23. Prior art DC shuttle cars did not utilize the transmission of AC power through the trailing cable and did not convert AC to DC on the shuttle car.

24. Prior art AC shuttle cars did not convert AC to DC on the shuttle car and utilized AC traction motors rather than DC motors.

25. Prior art shuttle cars did not show the particular means for converting AC to DC in a step-by-step fashion as recited in independent claim 16.

26. Several prior art references show the conversion of single phase AC rather than three phase AC.

27. The P & H shovel and the electric locomotives are too large or dangerous to use in the environment of the shuttle car.

28. The shovel and the electric locomotives cannot be modified to operate as shuttle cars, and their electrical circuitries cannot be used on a shuttle car.

29. The P & H shovel is a huge aboveground loader, not a haulage vehicle.

30. Electric locomotives do not travel in random paths in an explosive underground environment.

### E. *Level of Ordinary Skill in the Art*

31. The cited references reflect the appropriate level of ordinary skill in the art.

32. One of ordinary skill in the art to which the subject matter of the invention pertains would have knowledge of the operating conditions for shuttle cars.