**PREEMPTION DEVICES, INC.,**
Appellant,

v.

**MINNESOTA MINING AND MANUFACTURING COMPANY, Appellee.**

Appeal No. 83–1082.

United States Court of Appeals,
Federal Circuit.

April 12, 1984.

---

William E. Cleaver, Paoli, Pa., argued for appellant. With him on brief was Zachary T. Wobensmith, III, Philadelphia, Pa.

Joel S. Goldhammer, Philadelphia, Pa., argued for appellee. With him on brief were Steven J. Rocci, Philadelphia, Pa., and Terryl K. Qualey, St. Paul, Minn.

Before RICH, DAVIS and SMITH, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the March 18, 1983, judgment order (amended April 25, 1983) of the District Court for the Eastern District of Pennsylvania (Judge James T. Giles), 559 F.Supp. 1250, after a bench trial in a declaratory judgment action brought by appellant to declare invalid the William H. Long Reissue Patent No. 28,100 for "Traffic Signal Remote Control System" owned by appellee, Minnesota Mining and Manufacturing Company (3M), which counterclaimed for infringement of the patent. Appellant, Preemption Devices, Inc. (PDI), admitted that it "willfully and intentionally" infringed, but asserted five grounds of invalidity of the patent: three bars under 35 U.S.C. § 102(b), namely, on sale and in public use in this country and described in a printed publication more than one year prior to the date of the application for

patent in this country; obviousness from prior art under 35 U.S.C. § 103; and fraud in the then Patent Office in the prosecution of the application. In a most lucid and thorough opinion, 218 USPQ 245, including 37 findings of fact and 6 conclusions of law as well as detailed discussion of each of the aforesaid five points, the trial court rejected each of these assertions. A permanent injunction was granted and an accounting ordered. We affirm.

■ PDI raises on appeal each and every one of its five points and in its briefs asks us, in effect, to review the entire record and reach our own conclusions on each point—in its favor, of course. This is not our function as an appellate court. Fed.R. Civ.P. 52(a); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129, 161 U.S. P.Q. 577, 586 (1969):

> In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues de novo. The authority of an appellate court, when reviewing the findings of a judge as well as those of a jury, is circumscribed by the deference it must give to decisions of the trier of the fact, who is usually in a superior position to appraise and weigh the evidence. The question for the appellate court under Rule 52(a) is not whether it would have made the findings the trial court did, but whether "on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." [Cases cited.]

It behooved appellant, therefore, to precisely point out and demonstrate why the finding of the trial court, on any issue it argued, was *clearly* erroneous, not merely that we *might* reach a different conclusion on a de novo review. We are not in as good a position as was the trial judge to evaluate conflicting evidence or even to judge the true significance of documentary and physical exhibits introduced through or testified about by live witnesses who appeared before him.

We have carefully considered the opinion of the trial court and appellant's criticisms thereof. We find no sufficient reason to disturb its holding on any point. The opinion below discussed appellant's contentions under four headings. Familiarity with the opinion will be presumed, and we will comment briefly thereon under the same headings.

### A. *Sale or Public Use*

■ Preliminarily, to make our remarks intelligible, we explain that the Long patented invention resides in means to control city traffic light systems from emergency vehicles such as fire apparatus and ambulances, utilizing a pulsed, high-intensity light on the vehicle, similar to a strobe light, by which the vehicle can send a light beam signal ahead to the traffic signal controllers. Light signal receiving and control mechanism is installed adjacent to the controllers which causes them to cycle the traffic lights, stopping cross traffic in a normal fashion while giving the green light to the emergency vehicle well ahead of its arrival at an intersection.

In the process of developing the invention, Long and his business associates first developed prototypes which were installed in the California cities of Gardena and Buena Park. The trademark OPTICOM was adopted for the devices. At the same time, Long et al. were investigating the market, visiting many other cities, and making demonstrations. PDI asserted below that the early installations amounted to putting the invention on sale and/or in public use more than a year before the application for the patent was filed, thus creating a bar to the grant of a valid patent under 35 U.S.C. § 102(b). This was disputed by 3M as a legal proposition for various reasons and, assuming the use was of the invention, and insofar as it was public, asserted the experimental use exception to the bar. Evidence was received on many aspects of this issue which was required to be evaluated by the trial court. The patent application having been filed on March 16, 1967, the "critical

date" is a year earlier. The trial court's conclusions of law on this issue were:

1. The Opticom patent was not on sale before the critical date.

2. The uses of Opticom before the date were bona fide experiments.

We note in passing, that what the trial judge plainly meant by conclusion "1" was that the patented *invention,* not the patent, was not on sale; he was, as is very commonly done, using the word "patent" to mean the patented invention. Such use is confusing and should be avoided.

We do not find in appellant's arguments on this point anything more than a general disagreement with the trial judge's appraisal of the evidence on the basis of well-established law of which the judge had a thorough grasp. We find a total failure by appellants to establish error on these two issues. We find particularly unconvincing its argument based on the declaration filed in connection with the application to register the trademark OPTICOM, stating the dates of first use and first use in commerce. Those statements were not made with respect to the use of the invention but the use of the mark. The description of goods in the registration is very general and defines no particular apparatus.

### B. *Printed Publication*

█ This is the third contention based on § 102(b). The trial court dealt with two aspects of it. First, appellant relied on 1964 articles by Long in Electronic Industries Magazine describing a device called "Enetron" involving light communication but having nothing to do with traffic control, as the trial court found. The court disposed of this by holding, in effect, that under the precedents the article did not disclose the invention in such terms as to enable anyone to practice it. In the section of its brief before us devoted to the printed publication issue, appellant does not mention the "Enetron" articles, which is sufficient reason for us to ignore them. Instead, appellant concentrates on another so-called publication, some OPTICOM brochures. These the trial court found insufficient under § 102(b) for two reasons. As

with the "Enetron'" articles, he found the descriptions insufficient under the law. Furthermore, he found they did not qualify as "publications" since all the evidence showed regarding dissemination prior to the critical date was the mailing of six copies to a friend of Long's on March 9, 1966, with a view to their being used to get some financial backing. There is no evidence to show further dissemination by the friend before the critical date. Appellant has said nothing to contradict the court's holding that the dissemination of six copies to an individual was not a "publication" under § 102(b) or to show error in its third conclusion of law, "Opticom was not described in a printed publication before the critical date."

### C. *Obviousness*

█ Applying the correct tripartite test of *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 U.S.P.Q. 459 (1966), the trial judge considered the prior art relied on by appellant. He considered the invention of the patent in suit as a whole, together with its advantages over the prior art. He eschewed "synergism" as a legal requirement—properly—but found that even if it was a requirement, it existed here. All of this was the proper legal approach to the § 103 non-obviousness issue.

█ In the trial court, appellant urged obviousness in view of the "Enetron" articles and the Opticom brochures, supra. The trial court held the former "fundamentally different" and the argument based on the latter "sophistry." In this court, appellant refers to neither of these matters. They are therefore deemed abandoned arguments.

█ The ·trial court made it clear that the main argument on obviousness was based on Ramsey patent No. 3,114,127 and a Shepherd patent. There are three Shepherd patents of record and we presume No. 2,355,607 is principally relied on. These patents were considered by two different examiners in the Patent Office who allowed

the claims as patentable over them, first in the original patent and again in the reissue. Indeed, these patents are acknowledged in the specification of the patent in suit as prior art. The trial court correctly treated this consideration and action by the examiners as strong evidence of non-obviousness under Third and Seventh Circuit precedents.

 Appellant now seems to go somewhat beyond the obviousness issue in both its main and reply briefs, arguing that Ramsey is *anticipatory* of "the patent"— i.e. *all* claims—under § 102(b), and that they are all obvious from Ramsey in view of Shepherd under § 103. The anticipation argument appears to be new in this court; at least it was not discussed in the trial court opinion. In any event, it is not sustainable in the form presented. Each claim of a patent must be treated separately. When not all claims are asserted to be invalid for anticipation or obviousness, "the patent" cannot be held invalid on either ground; each claim must be presumed valid independently of the validity of any other claim. The court must limit decision to the claims before it. *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1552, 220 U.S.P.Q. 193, 201 (Fed.Cir.1983).

With respect to the claims placed in issue, enumerated in the opinion of the trial court as 1, 3, 4, 5–7, 9 and 10, the record contains conflicting testimony of technical expert witnesses and other evidence on their meaning and scope as well as evidence of advantages and commercial success bearing on obviousness, which had to be evaluated by the trial judge. Appellant's brief asserts that "The Court ignored the Shepherd and Ramsey patents," that the court was "obviously lacking in skills relating to technical matters," and lacked "understanding [of] the significance of the claims in the Long patent," and "simply ignored Dr. Larky's [PDI's expert] testimony." These statements, unfortunately, typify the nature of appellant's arguments. They are amply refuted by a mere reading of the court's opinion which shows a careful and detailed consideration of the Shep-

herd and Ramsey patents, on which the judge listened to days of testimony, and a careful appraisal of the expertise of the opposing experts which led him to conclude that the expertise of 3M's expert in the field of traffic control devices was "far superior to that of Dr. Larkey's [sic] and thus his testimony is deserving of additional weight on that subject."

In appellant's four pages of argument on the legal issue of obviousness, we fail to find any showing of error in any finding underlying that issue that could give us a "definite and firm conviction that a mistake has been committed" or that there is any error of law in the trial judge's conclusion.

 Appellant's Reply Brief attempts further to fault the trial judge on the ground he "does not understand the significance of patent claims" because he "never once mentions the claims of the patent in contest" in his opinion and also on the ground that he relied on "sales pitch features" which was allegedly error because they are not recited in the claims of the patent in contest. It is regrettable that we should have to remind counsel that attacking the judge as lacking in skill or understanding or legal competence, as has repeatedly been done in this case, is improper argument and wholly ineffective, if not counterproductive. It has no tendency to prove anything. As for putting advantages or "sales pitch features" in claims, counsel should know that they do not properly belong in claims, the sole function of which is to point out distinctly the process, machine, manufacture, or composition of matter which is patented, 35 U.S.C. § 101, 112, not its advantages. It is entirely proper, nevertheless, in evaluating nonobviousness, for a court to take into account advantages directly flowing from the invention patented. After all, those advantages are the foundation of that "commercial success" which may be evidence of nonobviousness. *Graham v. John Deere Co.*, supra.

 The decision of the trial court that the invention defined by the claims in suit

would not have been obvious within the meaning of § 103 must stand.

### D. *Fraud in the Patent's Prosecution*

The trial judge said he was "unable to find any intentional, material misstatements or omissions made in the Patent Office" and, having read all appellant has to say, we are likewise unable to find any. The gist of this argument is that the patent applicant should have brought to the attention of the examiner some of the documentation, referred to above, on which appellant has *unsuccessfully* relied in this case to show the three alleged bars under § 102(b) and obviousness under § 103. Far from the allegation that it "smacks of outright fraud," we have rarely seen a less meritorious presentation of this muchabused and too often last-resort allegation. It merits no further comment.

### Summary

The judgment of the District Court is in all respects *affirmed.*

Appellee shall have its costs in this court.

AFFIRMED.