**The ESTATE Of Hylan B. STOLLER, et al., Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

**No. 87 C 3729.**

United States District Court, N.D. Illinois, E.D.

Jan. 8, 1992.

---

Norman Lettvin, Norman Lettvin, Ltd., Rolf O. Stadheim, Joseph Grear, Law Offices of Rolf Stadheim, Ltd., Chicago, for plaintiffs.

John R. Crossan, William, Brinks, Olds, Mofer, Gilson & Lione, Ltd., Chicago, Steven G. Schumaier, Schumaier, Roberts & McKinsey, St. Louis, Mo., for defendant.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

This patent infringement action comes to us on remand from the Court of Appeals for the Federal Circuit. Plaintiffs (Stollers) had filed suit in 1987 against Ford Motor Company (Ford), Chrysler Corporation (Chrysler) and Mercedes–Benz of North America, Inc. (MBNA), individually, alleging infringement of claims 5 and 6 [1] of

---

1. Claims 5 and 6 of the '538· patent read as follows:

5. A headrest adapted for positioning above the top of a seat backrest which comprises: a pillow body, the interior of said body defining an opening; an elongated rigid member positioned within said opening; means frictionally and pivotally connecting said interior of the pillow body to said rigid member; said rigid member being located in an eccentric pillow axis, thereby providing an eccentric pivotal axis for said pillow; said frictionally connecting means and said rigid member cooperating to enable said pillow to be pivoted about said eccentric axis solely by manipulation of said pillow; a support member ex-

U.S. Patent No. 3,507,538 ('538 patent). The three suits were consolidated for discovery and assigned to this court. Ford and MBNA [2] moved for summary judgment contending that claims 5 and 6 of the '538 patent were invalid due to anticipation or obviousness, in light of certain prior art. The court granted this motion, finding both claims anticipated, and dismissed this action. The Federal Circuit reversed and remanded for further proceedings. Ford once again moves for summary judgment on the question of invalidity, alleging that claim 5 is anticipated or, alternatively, that claim 5 was obvious in light of certain prior art, which we discuss later. Ford also alleges that claim 6 was obvious in light of additional prior art. For the reasons stated, we deny Ford's motion.

## I. *Prior Proceedings*

As stated above, we earlier held that the '538 patent was anticipated and thus invalid. *See Stoller v. Ford Motor Co.*, 711 F.Supp. 1451, 1458, 12 U.S.P.Q.2d 1197, 1204 (N.D.Ill.1989) (*Stoller I*), *rev'd and remanded*, 925 F.2d 1480, 18 U.S.P.Q.2d 1545 (Fed.Cir.1991) (unpublished). In *Stoller I* we found that U.S. Patent No. 2,985,228 to Golden (Golden) expressly disclosed every element of claim 5 except the limitation pertaining to frictional and pivotal connecting means. However, we concluded that Golden inherently disclosed this element. *Id.* at 1456, 12 U.S.P.Q.2d at 1202. We believed that the clamp acting on the tubular shaft inherently resulted in a frictional force and that when the clamp was properly adjusted the position of the headrest could be adjusted solely by manipulation of the headrest. *Id.* The Federal

Circuit disagreed and held that Golden did not inherently disclose a partial locking means because the frictional force did not "flow naturally" from Golden. *Stoller v. Ford Motor Co.*, 925 F.2d 1480, 18 U.S.P.Q.2d 1545, 1547 (Fed.Cir.1991) (unpublished).

We also found claim 6 anticipated by U.S. Patent No. 3,223,447 to Terracini (Terracini). *Stoller I*, 711 F.Supp. at 1458, 12 U.S.P.Q.2d at 1203. This was in error. Terracini does not disclose all the elements of claim 6. We should have analyzed Terracini together with Golden to determine whether claim 6 would have been obvious at the time of the invention. Consequently, the Federal Circuit reversed our finding of anticipation of claim 6. *See Stoller*, 18 U.S.P.Q.2d at 1547.

Because we held that claims 5 and 6 were anticipated, we did not find it necessary to determine if those claims had been obvious,[3] in light of combining other references submitted with Ford's and MBNA's motion for summary judgment. *Stoller I*, 711 F.Supp. at 1458, 12 U.S.P.Q.2d at 1204.

## II. *Standards of Decision*

### A. Burden of Proof

█ A patent is presumed valid, and the burden is on the defendant to establish facts supporting a conclusion of invalidity by clear and convincing evidence. *See Intel Corp. v. United States International Trade Comm'n*, 946 F.2d 821, 834, 20 U.S.P.Q.2d 1161, 1173 (Fed.Cir.1991); *Gillette Co. v. S.C. Johnson & Son, Inc.*, 919 F.2d 720, 722–23, 16 U.S.P.Q.2d 1923, 1926 (Fed.Cir.1990); *Oak Industries, Inc. v. Zenith Electronics Corp.*, 726 F.Supp. 1525,

---

tending downwardly directly from said rigid member and adapted for connection to said seat backrest; said pillow body defining a slot to enable said pillow body to be pivoted with respect to said support member.

6. A headrest as described in claim 5 including a backrest having a sleeve for receiving said support member; means cooperating with said support member for raising and lowering said pillow with respect to said seat backrest, said means for raising and lowering said pillow including a frictional clamp within said sleeve in frictional engagement with said support member.

**2.** The suit against Chrysler had been dismissed at the time of *Stoller I* and was not reinstated. Chrysler and the Stollers settled that suit on June 19, 1991.

**3.** We occasionally use "shorthand" to state the statutory standard of obviousness. In all cases, such shorthand means whether claims 5 and 6 would have been obvious to one of ordinary skill in the art at the time the invention was made.

1530, 14 U.S.P.Q.2d 1417, 1420 (N.D.Ill. 1989). Even though Ford has introduced prior art which was not considered by the Patent and Trademark Office (PTO), the clear and convincing standard remains. *See Gillette,* 919 F.2d at 723, 16 U.S.P.Q.2d at 1926; *Oak,* 726 F.Supp. at 1530, 14 U.S.P.Q.2d at 1420. We also note that the burden of proving invalidity remains on Ford and never shifts to the Stollers. *See American Hoist & Derrick Co. v. Sowa & Sons,* 725 F.2d 1350, 1360, 220 U.S.P.Q. 763, 771 (Fed.Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984); *Oak,* 726 F.Supp. at 1530, 14 U.S.P.Q.2d at 1420.

### B. Summary Judgment

■ In deciding this motion we must remain aware of the procedural posture of this case. This is a motion for summary judgment. Patent cases are no different from any other type of case and we grant summary judgment only "where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Scripps Clinic & Research Foundation v. Genentech, Inc.,* 927 F.2d 1565, 1571, 18 U.S.P.Q.2d 1001, 1005 (Fed. Cir.1991); *Renovitch v. Kaufman,* 905 F.2d 1040, 1044 (7th Cir.1990); *Oak,* 726 F.Supp. at 1531, 14 U.S.P.Q.2d at 1421. As Ford is the moving party, we must resolve all doubts as to whether a genuine issue of material fact exists in the Stollers' favor, and the Stollers are entitled to all reasonable inferences drawn in their favor. *See Scripps,* 927 F.2d at 1571, 18 U.S.P.Q.2d at 1005; *Oak,* 726 F.Supp. at 1531, 14 U.S.P.Q.2d at 1421. Where, however, Ford sufficiently supports the summary judgment motion, the burden of coming forward with evidence and showing that a genuine issue of material fact exists shifts to the Stollers. *See Scripps,* 927 F.2d at 1571, 18 U.S.P.Q.2d at 1005.

■ In addition, we note that we must consider the substantive evidentiary standard in deciding this motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Scripps,* 927 F.2d at 1576, 18 U.S.P.Q.2d at 1010. Thus, we must determine whether a reasonable jury would be compelled to find that Ford has presented sufficient evidence to clearly and convincingly prove that the '538 patent is invalid. *See Anderson,* 477 U.S. at 255–56, 106 S.Ct. at 2513–14; *Oak,* 726 F.Supp. at 1531, 14 U.S.P.Q.2d at 1421. If we do not so find, we must deny Ford's motion.

### III. *Discussion*

Ford now renews its attack on claim 5 of the '538 patent on the grounds of anticipation in light of Golden, and also argues that claims 5 and 6 of the '538 patent were obvious in view of Golden and other references. We first deal with the anticipation arguments.

### A. Anticipation

Ford contends that three additional patents, U.S. Patent No. 2,586,952 to Johnson, *et al.* (Johnson), U.S. Patent No. 1,940,540 to Gagnier, *et al.* (Gagnier), and U.S. Patent No. 2,466,553 to McDonald (McDonald), submitted with this motion, show that a person having ordinary skill in the art would have understood the clamp/tubular shaft mechanism disclosed in Golden to be a partial locking mechanism, such that the headrest could be pivoted and held in place by frictional force. Ford argues that the information in these references would have led one of ordinary skill in the art to understand that Golden's disclosure of using the clamp "to engage or disengage the shaft" inherently disclosed the frictional pivotal means.

The Stollers first argue that whatever the merits of Ford's argument, further challenges to the '538 patent based on anticipation by Golden are precluded by the doctrine of law of the case. They contend that the Federal Circuit held that Golden did not disclose a partial locking means and that the law of the case precludes further arguments along this line. While we agree with Stollers' interpretation of the Federal Circuit's decision, we believe that we may consider Ford's evidence at our discretion.

### 1. *Law of the Case*

The law of the case doctrine is based on policy considerations that recognize that once an issue is litigated and decided no further litigation should occur on that issue. This is a "rule of practice" which is a self-imposed limit and therefore is not ironclad. *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir.1982), *cert. denied*, 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983).[4] However, absent unusual circumstances, the district court should apply this doctrine. *See Parts and Electric Motors, Inc. v. Sterling Electric, Inc.*, 866 F.2d 228, 231 (7th Cir.1988), *cert. denied*, 493 U.S. 847, 110 S.Ct. 141, 107 L.Ed.2d 100 (1989). Although there are two legs to the law of the case doctrine, *see Gertz*, 680 F.2d at 532, we are only interested in the part of that doctrine that requires a district court to apply the decision of an appellate court on remand. *Id.; James Burrough Ltd. v. Sign of the Beefeater, Inc*, 572 F.2d 574, 577 (7th Cir.1978).

The doctrine applies to those issues that were "fully decided." *Trustees of Indiana University v. Aetna Casualty & Surety Co.*, 920 F.2d 429, 435 (7th Cir. 1990). This means issues that were expressly or by necessary implication decided by the appellate court but do not cover issues which were not presented or decided or which could have been decided. *Parts and Electric Motors*, 866 F.2d at 231–32. Thus, in applying the law of the case doctrine it is critical that we determine which issues the Federal Circuit decided on appeal. *See id.* at 231; *Gertz*, 680 F.2d at 533.

Ford contends that the Federal Circuit, looking only at the four corners of Golden, held that a genuine issue of material fact existed on the issue of anticipation. We disagree. The appellate court clearly stated that Golden did not inherently disclose a frictional and pivotal connecting means because that property did not "flow naturally" from the teaching of Golden. *Stoller*,

925 F.2d 1480, 18 U.S.P.Q.2d at 1547 (citing *In re Oelrich*, 666 F.2d 578, 581, 212 U.S.P.Q. 323, 326 (C.C.P.A.1981)). We must abide by that decision.

Ford's next argument is that the law of the case doctrine does not apply because a court may allow another motion for summary judgment based on additional evidence. Under the circumstances of this case, we agree with Ford. Neither Ford nor MBNA introduced any evidence in *Stoller I* which could explain how a person of ordinary skill in the art would have understood Golden's teaching of a clamp engaging or disengaging a shaft. Stollers contend, however, that Ford argued the "new evidence" it now seeks to introduce on appeal, *see* Plaintiffs' Ex. A (Brief of Appellee Ford, at 24), and thus the Federal Circuit has already rejected these arguments. In the absence of discussion in the Federal Circuit opinion, we cannot presume that the appellate court considered Ford's unsupported arguments when deciding that Golden does not anticipate the '538 patent. Thus, the issue Ford asks us to decide was not decided explicitly or by necessary implication by the court of appeals. However, the question remains as to whether we may consider Ford's "new evidence" while still following the Federal Circuit's ruling.

The Stollers correctly point out that there are three exceptions to the rule requiring a district court to follow a prior appellate court ruling: substantial new evidence, a subsequent change in the law, or a conclusion by a subsequent reviewing court that the first appellate court decision was clearly erroneous. *See Parts and Electric Motors*, 866 F.2d at 231. Only the "new evidence" exception is relevant to this motion. Generally, to come under this exception the party seeking to introduce new evidence must show that such evidence could not have been discovered earlier by reasonable means. *See Smith International, Inc. v. Hughes Tool Co.*, 759 F.2d 1572, 1578–79, 225 U.S.P.Q. 889, 893–94

---

**4.** Even though this is a patent case, we follow Seventh Circuit law because this doctrine is a "procedural matter not unique to patent law." *See Jamesbury Corp. v. Litton Indus. Products,*

*Inc.*, 839 F.2d 1544, 1550 n. 20, 5 U.S.P.Q.2d 1779, 1783 n. 20 (Fed.Cir.), *cert. denied*, 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988).

(Fed.Cir.), *cert. denied,* 474 U.S. 827, 106 S.Ct. 87, 88 L.Ed.2d 71 (1985). For example, in *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243, 251 (D.C.Cir.1987), a piece of "highly material" evidence turned up during discovery, following the first summary judgment motion, when a witness refuted earlier statements that went to the heart of certain claims. Such is not the case here. Ford does not argue that these three patents could not have been discovered by reasonable diligence prior to its first motion for summary judgment and we believe it would be within our discretion not to consider this evidence. *See Hartford Accident and Indemnity Co. v. Gulf Insurance Co.,* 837 F.2d 767, 774 (7th Cir.1988) (" 'a case is ordinarily not remanded to give a party the opportunity to supply missing evidence' ") (citation omitted).

■ This still leaves us with the question of whether to allow Ford to introduce this new evidence. The rule in this circuit is that where the appellate court remands for proceedings consistent with its opinion, the decision to consider new evidence is left to the sound discretion of the district court. *Hartford,* 837 F.2d at 773.

■ If we had denied Ford's (and MBNA's) motion in *Stoller I,* no one doubts that Ford could have introduced such evidence at trial. For example, in *Stoller I,* we did not find that the '538 patent was anticipated by U.S. Patent No. 3,159,427 to Lawson, because a genuine issue of material fact existed concerning whether a certain structure in Lawson was equivalent to that disclosed in the '538 patent. *See Stoller I,* 711 F.Supp. at 1456–57, 12 U.S.P.Q.2d at 1202–03. At trial, the defendants will be free to introduce evidence on the question of equivalency. Similarly, it would be unfair to have expected Ford to introduce all evidence at the summary judgment stage concerning interpretation of Golden. Consequently, we see no reason not to consider Ford's evidence and, at our discretion, will evaluate that evidence. We hold that Ford may introduce evidence seeking to explain Golden.

## 2. *Does Golden Inherently Anticipate Claim 5 of the '538 Patent?*

Ford argues that the three patents,[5] Johnson, Gagnier and McDonald, are relevant to the issue of anticipation. Ford contends that these three references would have taught a person having ordinary skill in the art to operate the headrest on the chair discussed in Golden in accordance with claim 5 of the '538 patent, *i.e.,* using the clamp/shaft mechanism as a partial locking means to hold the headrest in place by friction.

■ To show anticipation, Ford must prove that *every* limitation of claim 5 is shown in a single reference, in this case Golden. *See Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 1236, 9 U.S.P.Q.2d 1913, 1920 (Fed.Cir.), *cert. denied,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989). However, additional references may be used to show how a person of ordinary skill in the art would have understood the teachings of the primary reference. *See Scripps,* 927 F.2d at 1576, 18 U.S.P.Q.2d at 1010; *In re Donohue,* 632 F.2d 123, 125–26, 207 U.S.P.Q. 196, 199 (C.C.P.A.1980); *In re Wiggins,* 488 F.2d 538, 543, 179 U.S.P.Q. 421, 424 (C.C.P.A.1973). Use of such evidence extrinsic to the primary reference is limited and may not be used to add limitations missing from the primary reference. *Scripps,* 927 F.2d at 1576, 18 U.S.P.Q.2d at 1010. For example, the parties in *Scripps* filed affidavits by the author of a reference attempting to explain his dissertation. *Id.,* 927 F.2d at 1577–78, 18 U.S.P.Q.2d at 1010–11.

■ Johnson, Gagnier and McDonald each show that various frictional and pivotal means were known to those of ordinary skill in the art, and Ford contends that they show that such persons would have understood Golden to include the missing element. We agree that each of these references teaches use of a frictional and pivotal means. *See infra* at 22. However, none of these patents sheds any light on, or explains, Golden's teaching of engaging or

---

**5.** These three patents are prior art. See *infra* at 13.

disengaging the tubular shaft with a clamp. All these references show is that frictional and pivotal means were well known before Stoller filed his application. To find anticipation based on these references, we must go beyond the boundaries of Golden to provide the missing limitation. This we may not do, and, consequently, we find that Golden does not anticipate the '538 patent. *See Scripps,* 927 F.2d at 1577, 18 U.S.P.Q.2d at 1010. Therefore, we deny Ford's motion claiming anticipation of claim 5 by Golden. However, the three references may well support a finding of obviousness and we now turn to this question.

### B. Obviousness

Alternatively, Ford contends that claim 5 was obvious, taking Golden in view of Johnson, Gagnier or McDonald. Ford argues that claim 6 was obvious in view of these patents and U.S. Patent No. 2,827,110 to Rising (Rising) or Terracini. Obviousness is a legal conclusion premised on factual determinations set out by the Supreme Court in *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 U.S.P.Q. 459, 467 (1966). Before a trier of fact decides the question of obviousness, that trier of fact *must* determine

> (1) the scope and content of the prior art, (2) the differences between the claimed invention and the prior art, (3) the level of ordinary skill in the art, and (4) objective evidence of non-obviousness, such as commercial success, long felt but unsolved need, failure by others, copying and unexpected results.

*Greenwood v. Hattori Seiko Co.,* 900 F.2d 238, 241, 14 U.S.P.Q.2d 1474, 1476 (Fed.Cir. 1990) (emphasis added).

### 1. *Scope and Content of the Prior Art*

■ This factual inquiry required by *Graham* contains two parts. First, we must determine the scope of the prior art, and that requires us to find which references are relevant prior art. Second, we must understand what the relevant references would have meant to a person having ordinary skill in the art. This determines the content of the prior art. *Joy Technologies,*

*Inc. v. Quigg,* 732 F.Supp. 227, 232–33, 14 U.S.P.Q.2d 1432, 1438 (D.D.C.1990) (Bennett, S.J., sitting by designation). The Stollers raise two issues concerning the prior art, which they claim preclude summary judgment. First, the Stollers contend that there is a genuine issue as to whether Ford's references are analogous art and, second, they dispute Ford's interpretation of the content of those references.

### a. The Prior Art

Ford has submitted six patents with this motion, all of which have filing dates more than one year prior to the December 4, 1967 filing date of the '538 patent. All six patents thus qualify as prior art under 35 U.S.C. § 102(b). Further, plaintiffs admit that these six patents are prior art. *See* Plaintiffs' Rule 12(n) Statement, paras. 3–8. A short summary of the pertinent portions of the disclosures of these six patents is given below.

#### i. *Golden*

Golden discloses a chair and a mechanism for adjusting and locking the position of a headrest. The specific application discussed is a dental chair. The headrest in Golden contains a tubular shaft (rigid member) in an opening in the headrest. A headrest support (vertical supporting member) extends downward from the tubular shaft and is connected to the seat backrest. The rotational position of the headrest is adjusted using a clamp to engage or disengage the tubular shaft. Golden states that this clamp/shaft mechanism locks the headrest in its desired position (col. 3, lines 15–18).

#### ii. *Johnson*

Johnson discloses a headrest with particular application to dental and surgical chairs. Two members (identified as the fork 14 and the portion 11) are connected to allow the headrest to rotate with relation to the headrest support (fork) (cols. 2, lines 15–18). A frictional device is in contact with one of the arms of the fork to hold the position of the headrest (*id.* at lines 26–28). The frictional device disclosed by Johnson is either a spring-biased round member or a

rubber U-shaped member (*id.* at lines 26–28). The frictional force holds the headrest in position (*id.* at lines 38–39, col. 3, lines 30–35), and the headrest may be adjusted solely by rotating the headrest (*id.* at col. 3, lines 35–40).

### iii. *Gagnier*

Gagnier discloses an automobile sun and glare shield. The sun and glare shield is rotated through the use of a frictional hinge. This hinge comprises a pintle encompassed by a pintle-engaging loop. A bolt/nut combination is tightened or loosened to adjust the amount of friction applied by the loop upon the pintle (p. 2, lines 41–60). The frictional force thus holds the shield in place (*id.* at lines 69–73), and may be adjusted to an infinite number of positions by moving the panel (*id.* at lines 73–77).

### iv. *McDonald*

McDonald relates to a headrest with specific application to an automobile or airplane. McDonald discloses a frictional pivot comprising spring washers with a nut and bolt combination (col. 1, lines 54–58). The frictional pivot maintains the headrest in position yet allows rotational adjustment of the headrest by forcing the headrest "back and forth manually" (*id.* at 58–60, col. 2 at lines 1–3). A second frictional pivot joint is disclosed (*id.* at col. 2 at lines 4–8), but the disclosure does not further describe the operation of this joint.

### v. *Rising*

Rising describes a headrest specifically used for automobiles. Rising discloses a headrest which can be raised or lowered, using a vertical member (called connecting means 4) within a channel. Rising teaches that the channel may be offset and constructed to "frictionally lock" the vertical member in any desired position (col. 2, lines 36–49).

### vi. *Terracini*

Terracini relates to back rest attachments for automobile seats and discloses a headrest that can be raised and lowered by the seat occupant. Terracini discloses a rod/sleeve device that allows vertical positional adjustment of the headrest. The sleeve described in Terracini is tightened, using a screw/nut combination.

### b. Scope of the Prior Art

Stollers contends that Ford has not submitted any affidavits to show that a dental chair would be considered analogous art. Ford counters that during prosecution the Examiner cited an adjustable chair (U.S. Patent No. 2,307,621 to Dorton (Dorton)) and that rather than object to Dorton as prior art Stoller distinguished his claims from Dorton.

We may decide the question of what is analogous art from the prior art itself, without the need for any additional affidavits. *See Union Carbide Corp. v. American Can Co.*, 558 F.Supp. 1154, 1157 n. 2, 218 U.S.P.Q. 938, 940 n. 2 (N.D.Ill.1983), *aff'd*, 724 F.2d 1567, 220 U.S.P.Q. 584 (Fed. Cir.1984). In fact, there is no need for any expert testimony if the references are readily understandable to the trier of fact. *See Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1573, 220 U.S.P.Q. 584, 589 (Fed.Cir.1984). We also note that, as with all other issues, so long as there is no genuine issue of material fact we may decide if a reference is analogous art at the summary judgment stage (*id.* at 1571–72, 220 U.S.P.Q. at 588–89).

■ While Stollers question what is analogous art, and Ford claims that Stollers "quibble," neither party has addressed the legal test for answering this question. An inventor is held to full knowledge of the prior art within his own field. Outside that field, however, the inventor is presumed to have knowledge only of art which is "reasonably pertinent to the particular problem with which the inventor was involved." *In re Wood*, 599 F.2d 1032, 1036, 202 U.S.P.Q. 171, 174 (C.C.P.A.1979). Courts look at whether the reference deals with a similar problem to the one in which the inventor was involved. *Union Carbide*, 724 F.2d at 1572, 220 U.S.P.Q. at 588.

■ The problem facing Stoller was developing a headrest that could be rotated solely by manipulating the pillow, yet would remain in position during use. Further, Stoller defined his field of endeavor

as headrests that could be adapted for positioning above a seat. *See* '538 patent at col. 1, lines 15–16. We take this broad statement as the field of invention against which we compare the prior art submitted by Ford. *See Joy Technologies*, 732 F.Supp. at 234, 14 U.S.P.Q.2d at 1439.

Very clearly, Golden, Johnson, McDonald, Rising and Terracini disclose headrests. Johnson, McDonald and Rising are particularly directed at headrests (Rising is directed to an automobile headrest), while Golden and Terracini are directed toward a chair and a backrest, respectively. There is no question that Johnson, McDonald and Rising clearly are within Stoller's field of invention—headrests that are to be positioned above a seat. All three references deal with a problem similar to that considered by Stoller. The fact that Johnson and McDonald are not directed toward the topic of automobile headrests is not relevant. While Stoller may have been concerned with automobile headrests, claims 5 and 6 are not so limited. The Stollers may not now seek to limit the field of invention to avoid the prior art.

█ Turning to Golden and Terracini, we find that there is no question of fact that these two patents are, at the very least, pertinent, if not actually within Stoller's field of invention. The Examiner cited Terracini, without objection to its relevance to Stoller's field of endeavor.[6] While the Examiner did not cite Golden, the Examiner did cite Dorton, a patent on an adjustable chair. As with Terracini, Stoller argued that differences existed between Dorton and his claims, not that the reference was not analogous art. *See* Stoller's April 1, 1969 response to Jan. 9, 1969 Office Action, at 2–3. Further, it is clear that Golden, which teaches about a chair and a rotatable headrest, concerns a problem similar to that facing Stoller. There is no factual question but that Golden clearly was pertinent to Stoller's field of endeavor.

The only evidence on the record is the prior art and the prosecution history. The Examiner cited similar patents during pat-

ent prosecution, and this is additional uncontested evidence to support our conclusion that Golden, Johnson, McDonald, Rising and Terracini are analogous art. Such evidence clearly establishes the scope of the prior art. *See Union Carbide*, 558 F.Supp. at 1161 & n. 9, 218 U.S.P.Q. at 943 & n. 9. We cannot conceive of any reasonable inferences that would suggest otherwise. The Stollers' question in their brief is unsupported by any evidence and does not raise a material factual issue. *See Union Carbide*, 724 F.2d at 1572, 220 U.S.P.Q. at 588–89; *Joy Technologies*, 732 F.Supp. at 234, 14 U.S.P.Q.2d at 1439.

█ Our conclusion that the five patents discussed above are analogous art leaves open the question of whether Gagnier also is analogous art. Gagnier relates to a sun visor used in a vehicle. Such a device is not within the field of headrests. *Cf. In re Pagliaro*, 657 F.2d 1219, 1224–25, 210 U.S.P.Q 888, 892 (C.C.P.A.1981) (reference teaching that caffeine is more soluble in an oil/serum mixture not analogous within field of endeavor of decaffeination of vegetable materials).

Whether Gagnier is pertinent also appears questionable. It is not clear that there is a "close relationship" between the subject matter of Gagnier as a whole and the claims at issue. *See id.* at 1225, 210 U.S.P.Q. at 892. Further, we are uncertain whether a person skilled in headrest art would have looked to rotatable sun and glare shields to solve the problem of rotatable headrests. Although a trier of fact may so find after hearing evidence on this matter, *cf. Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313–14, 227 U.S.P.Q. 766, 768–69 (Fed.Cir.1985) (one skilled in pen art would have looked to plastic hinge and fastener art to solve problem of a simple holding means to enable frequent, secure attachment and easy removal of a marker pen to and from a pen arm); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1535, 218 U.S.P.Q. 871, 876 (Fed.Cir.1983) (rubber hose art pertinent to problem of electrostatic buildup in polytet-

---

**6.** Stoller argued that Terracini did not disclose certain elements in his claims. See Stoller's

April 1, 1969 response to Jan. 9, 1969 Office Action at 3 (Ford ex. K).

rafluoroethylene tubing), we are not yet at that stage. Doubts as to whether a genuine issue of material fact exists must be resolved in the Stollers' favor. Because the evidence in the record is unclear, we find that a material question of fact exists as to whether Gagnier is analogous art.[7]

### c. The Content of the Prior Art

The Stollers dispute Ford's interpretation of the content of the prior art. Ford introduces the prior art patents and we may determine their content by reading those patents. *See Chore–Time Equipment, Inc. v. Cumberland Corp.*, 713 F.2d 774, 779, 218 U.S.P.Q. 673, 673 (Fed.Cir.1983). The Stollers introduce no evidence to support their position that a factual question exists as to the content of the prior art. The burden, of course, remains on Ford and all reasonable inferences must be drawn in the Stollers' favor.

■■■ We must consider the prior art patents as a whole, and consider any portions that would teach away from Stoller's invention. *See Panduit Corp. v. Dennison Manufacturing Co.*, 810 F.2d 1561, 1568, 1 U.S.P.Q.2d 1593, 1597 (Fed.Cir.), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987). The relevant patents are not complex and we may determine the content of that prior art without expert witnesses. *See Union Carbide*, 558 F.Supp. at 1157 n. 2, 218 U.S.P.Q. at 940 n. 2. Stollers' argument that they disagree with Ford's interpretation of the prior art does not prevent us from determining the content of the prior art. Stollers' conclusory statements are insufficient to create a genuine issue of material fact. *See Joy Technologies*, 732 F.Supp. at 235, 14 U.S.P.Q.2d at 1439.

Golden discloses a pillow body (headrest) that contains an elongated rigid member (transverse shaft) within an opening in the headrest. The transverse shaft is positioned within the headrest to provide an eccentric pivotal axis. A clamp is connected to the internal structure of the headrest pivotally connecting the interior of the headrest with the transverse shaft. Gold-

en also discloses a support member (headrest support) which extends downwardly into the seat backrest. The headrest is pivoted by using a clamp to engage or disengage the tubular shaft. Golden further discloses a slot (notched headrest) that enables the headrest to be pivoted with respect to the support. Finally, Golden teaches use of a sleeve (lower section) for receiving the headrest support, and a clamp (albeit a locking device) for raising and lowering the headrest support.

Johnson discloses a frictional and pivotal apparatus for frictionally holding a headrest in a rotational position. The Johnson apparatus consists of a headrest (base member, cushion and retaining cover) that can be pivoted with respect to a downwardly extending support member (fork). Two frictional means, a spring biased member and a rubber member, are identified in Johnson. The frictional force of either of these means holds the headrest in place and allows a person to adjust the headrest solely by manipulating the headrest.

McDonald discloses a different frictional pivoting means: a nut and bolt combination. Like Johnson, this means holds the headrest in place, yet allows headrest rotation solely by manipulating the headrest.

Gagnier discloses a frictional hinge that allows an automobile sun and glare shield to pivot and to be held in place by frictional force. The frictional force exerted by the hinge may be increased or decreased by tightening or loosening a bolt/nut combination. A person may adjust the position of the shield solely by manipulating the shield.

Rising teaches an apparatus for raising or lowering a headrest, using a downwardly-extending support member (connecting means) within a channel. Rising also describes a frictional apparatus that can "frictionally lock" the connecting means within the channel in contact with the supporting means. Rising also teaches an alternate embodiment that allows locking of the connecting means to the supporting means.

---

**7.** For the sake of completeness, we will analyze Gagnier through other parts of the *Graham* test.

Finally, Terracini discloses a headrest that can be raised or lowered by loosening and tightening a sleeve around a rod using a screw/nut combination. Terracini does not explicitly disclose a frictional clamp.

### 2. Level of Ordinary Skill in the Art

 Ford concedes, for purposes of this motion, that a lay person would be a person having ordinary skill in the art. The Stollers argue that a factual issue exists with respect to this question because Chrysler asserted, in answering interrogatories, that the level of ordinary skill in the art should be that of "automobile designers with engineering degrees and other skilled designers and mechanics with years of experience" (pl. ex. B at 6). However, no *genuine* issue of material fact exists for the purposes of this motion. Ford has conceded the level of skill most favorable to a patent owner. *See Union Carbide,* 724 F.2d at 1573, 220 U.S.P.Q. at 589; *Chore–Time,* 713 F.2d at 779 & n. 2, 218 U.S.P.Q. at 676 & n. 2. There is no evidence in the record from which we could reasonably infer that a higher level of skill would be more favorable to the Stollers. *See Chore–Time,* 713 F.2d at 779 & n. 2, 218 U.S.P.Q. at 676 n. 2. Consequently, for purposes of this motion, we hold that a person having ordinary skill in the art would be a lay person.

### 3. Differences Between the Prior Art and the Claims

#### a. Claim Interpretation

 Before we can compare the prior art we must have a proper interpretation of claims 5 and 6 with which to make the comparison. Claim interpretation is a question of law. *Howes v. Medical Components, Inc.,* 814 F.2d 638, 643, 2 U.S.P.Q.2d 1271, 1273 (Fed.Cir.1987). If possible, we should construe claims 5 and 6 to sustain their validity. *See ACS Hospital Systems, Inc. v. Montefiore Hospital,* 732 F.2d 1572, 1577, 221 U.S.P.Q. 929, 932 (Fed.Cir.1984).

In *Stoller I* we interpreted claims 5 and 6 to exclude certain limitations not recited in those claims, such as no "outstanding projections" from the apparatus. *See Stoller I,* 711 F.Supp. at 1455 & n. 3, 12 U.S.P.Q.2d

at 1201 & n. 3. Plaintiffs have not asked for reconsideration of that ruling and we see no reason to revisit the subject. With the exception of the frictionally- and pivotally-connecting means recited in claim 5 and the cooperating means of claim 6, the meaning of claims 5 and 6 is clear. All other elements are well defined and we may compare the claims to the prior art. *See Chore–Time,* 713 F.2d at 779, 218 U.S.P.Q. at 673.

 Claim 5 contains a "means plus function" element, a frictionally- and pivotally-connecting means. Such an element, while construed broader than the specific means described in the '538 patent, *see D.M.I., Inc. v. Deere & Co.,* 755 F.2d 1570, 1574, 225 U.S.P.Q. 236, 238 (Fed.Cir.1985), is limited to cover the equivalent of the disclosed structure. *In re Bond,* 910 F.2d 831, 833, 15 U.S.P.Q.2d 1566, 1568 (Fed.Cir. 1990) (per curiam); *In re Iwahashi,* 888 F.2d 1370, 1375 & n. 1, 12 U.S.P.Q.2d 1908, 1912 & n. 1 (Fed.Cir.1989). Under 35 U.S.C. § 112, para. 6, the element disclosed in the prior art must perform the same function as the means plus function element of claim 5. *See RCA Corp. v. Applied Digital Data Systems, Inc.,* 730 F.2d 1440, 1444–45 & n. 5, 221 U.S.P.Q. 385, 388–89 & n. 5 (Fed.Cir.), *cert. dismissed,* 468 U.S. 1228, 105 S.Ct. 32, 82 L.Ed.2d 923 (1984). The element disclosed in the reference also must be the same as or equivalent to the structure disclosed in the '538 patent. *See Iwahashi,* 888 F.2d at 1375 n. 1, 12 U.S.P.Q.2d at 1912 n. 1. Whether an element in the prior art is the structural equivalent of a claimed element is a question of fact. *Bond,* 910 F.2d at 833, 15 U.S.P.Q.2d at 1568.

We look to the specification of the '538 patent, its prosecution history and other claims, as well as affidavits of experts, to interpret the structural equivalents to the structure described by Stoller. *See Intel,* 946 F.2d at 842–43, 20 U.S.P.Q.2d at 1179–80. Unfortunately, neither the '538 specification nor the prosecution history submitted with this motion give any indication as to how to interpret structural equivalents of the clamp/tube apparatus that

Stoller referred to as frictional and pivotal means in claims 5 and 6. Without more evidence such as affidavits from experts, we must, for purposes of this motion, limit the interpretation of frictional and pivotal means to structures which are almost identical to Stoller's clamp/tube apparatus.

To interpret claim 6 we also must determine the structural equivalents for the co-operating means. As with the frictional and pivotal means, the '538 specification provides little information. The only evidence in the record relevant to claim interpretation comes at the end of the specification, where Stoller stated that the "[m]eans for raising and lowering the pillow with respect to the seat may take various forms" ('538 patent, col. 3, lines 70–72). We interpret this as allowing a wide range of structural equivalents to the means disclosed in the patent. With the claims interpreted, we now compare the prior art to claims 5 and 6.

### b. Comparing the Prior Art to the Claims

Comparing the teachings of Golden described *supra*, to claim 5, it is clear that Golden teaches every limitation except the limitation of a frictional and pivotal connecting means enabling the headrest to be pivoted solely by manipulating the pillow. The Stollers' arguments do not make a genuine issue of material fact on this issue. We must, therefore, ascertain any differences between the additional prior art and claim 5, by comparing that prior art to Stoller's disclosure.

The frictionally- and pivotally-connecting means disclosed in the '538 patent comprises a pair of friction clamps surrounding a rigid tube. The clamps are connected to a spacer device inside the headrest such that the clamps and the headrest may be rotated with respect to the rigid tube. The proper frictional force between the clamps and the rigid tube is set by adjusting the tightness of a bolt/nut combination holding each such clamp together. As the bolts are tightened, greater friction is exerted on the tube. Conversely, as the bolts are loosened, less frictional force is present to maintain the headrest position with respect to the tube. This frictionally- and pivotally-connecting means is illustrated in Figures 2, 3 and 5 of the '538 patent. *See Stoller I,* 711 F.Supp. at 1459.

Johnson, McDonald and Gagnier disclose different frictional and pivotal means, described *supra* at 22, and Johnson and McDonald suggest the use of such means with a headrest. Comparing these patents to the '538 patent, we have no doubt that the frictional pivotal means disclosed in all three patents performs the same function as the element disclosed in the '538 patent. However, it is not clear that the frictional and pivotal connecting means disclosed in Johnson and McDonald are equivalent within the requirements of § 112, ¶ 6.

Ford does not argue that Johnson and McDonald disclosed equivalent structures to Stoller.[8] In fact, other than the '538 patent, defendants have introduced no evidence concerning whether the structures disclosed in Johnson or McDonald are equivalent to the structure disclosed by Stoller. With this lack of evidence, we must infer that a genuine issue of material fact exists concerning the differences between claim 5 and McDonald and Johnson.[9]

On the other hand, the apparatus disclosed in Gagnier clearly is the structural equivalent of the frictional pivotal means disclosed in Stoller's patent. Both means use a clamp-type device that surrounds a tube-like structure. In both cases the frictional force is adjusted by varying the tightness of a bolt/nut combination. There

---

8. In discussing the difference between claim 5 and the prior art, Ford contends: "That function [frictional pivoting of the headrest] however was taught in the other pivoting headrest and related art, *using identical structure* as Stoller in Gagnier and *for the same purpose* as Stoller in Johnson and McDonald" (Ford mem. in sup. of sum. jdgmt. at 13 (emphasis added).

9. Stollers do not argue explicitly that a factual question exists concerning whether the frictional and pivotal means disclosed in the prior art is equivalent to that disclosed in the '538 patent. However, plaintiffs do mention in para. 4 of their Rule 12(n) statement that "Johnson . . . is a different structure than that of the Golden or Stoller patents." We take this statement as raising the issue.

is no material fact at issue and we find that Gagnier clearly teaches an equivalent of Stoller's frictional pivotal means.

Claim 6 contains all the limitations of claim 5 plus additional limitations. The cooperating means recited in claim 6 comprises a frictional clamp. Rising discloses the additional limitation of a sleeve for receiving a support member and a frictional clamp means within the sleeve for raising and lowering the headrest. Rising also shows a sleeve in frictional engagement with a support member. Rising further teaches the use of such a frictional clamping means with a headrest, for use with an automobile seat. In this case it is clear, by comparing Rising's frictional clamp to the disclosure of the '538 patent, that they are equivalent both in function and structure. No additional evidence is necessary on the subject.

However, we do not believe that the screw/nut/sleeve device disclosed in Terracini clearly can be described as a frictional clamp. Terracini teaches clamping a receptacle to a tube by tightening a nut (col. 2, lines 47–50). Considering the Federal Circuit's interpretation of the pivoting means in Golden, a genuine issue of material fact exists concerning whether Terracini discloses a frictional clamp.

### 4. *Secondary Factors*

Before we may arrive at a legal conclusion on the issue of obviousness, we *must* consider any secondary factors. *Demaco Corp. v. F. Von Langsdorf Licensing*, 851 F.2d 1387, 1391, 7 U.S.P.Q.2d 1222, 1225 (Fed.Cir.) (quoting *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 306, 227 U.S.P.Q. 657, 674 (Fed.Cir.1985), *cert. denied*, 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986)), *cert. denied*, 488 U.S. 956, 109 S.Ct. 395, 102 L.Ed.2d 383 (1988). Secondary factors such as commercial success due to the invention, long-felt need, failure by others, skepticism by others skilled in the art; research in another direction, and copying the invention rather than the prior art, may be

the most probative evidence of non-obviousness in the record. *Panduit*, 810 F.2d at 1569, 1 U.S.P.Q.2d at 1598.

The Stollers argue that secondary factors are present. The Stollers' only "evidence" is an answer by Chrysler to one of plaintiffs' interrogatories discussing a defense of *laches* or *estoppel*, stating that friction-pivoting headrests were widely used in the industry prior to Chrysler's use (pl. resp. to Ford's mo. for sum. jdgmt., ex. B, at 10–11). From this evidence, Stollers argue that there is a genuine issue of material fact on the question of commercial success.

#### a. Commercial Success

For evidence of commercial success to be relevant to the inquiry into non-obviousness, the Stollers must show that there is in fact a commercial success and that any headrests that are commercially successful are covered by claims 5 and 6. *See Demaco*, 851 F.2d at 1392–93, 7 U.S.P.Q.2d at 1226. Because this is a motion for summary judgment, we must draw all *reasonable* inferences in favor of the Stollers.[10] *See Renovitch*, 905 F.2d at 1044. Perhaps we should infer, for purposes of this motion, that the headrests Chrysler claims support a defense of *laches* or *estoppel*, infringe claims 5 and 6 of the '538 patent. After all, *laches* and *estoppel* are affirmative defenses to a claim of infringement. *See J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1561, 223 U.S.P.Q. 1089, 1093 (1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985). We note, however, that the plaintiffs have consistently contended that friction-pivoting headrests generally are within the ambit of claim 5 but, as we have seen, friction-pivoting headrests with frictional means are somewhat different from that disclosed in the '538 patent.

Even so, without more, such an inference does not imply commercial success. The Stollers have introduced no evidence of sales or other economic data. Without such evidence, inferring commercial suc-

---

10. Plaintiffs nowhere suggest to this court what inferences may be reasonable and instead contend that Chrysler's statement raises a material

factual question on the issue of commercial success.

cess would be impermissible speculation on our part. *See Cable Electric Products, Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1026–28, 226 U.S.P.Q. 881, 888–89 (Fed.Cir. 1985). The Stollers, as the non-moving party, must present some evidence to establish a genuine issue of material fact. Simply raising doubts is insufficient. *See Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560, 7 U.S.P.Q.2d 1548, 1550 (Fed.Cir.1988). We find no relevant evidence of commercial success nor any genuine factual question concerning such issue.

### b. Copying

■ Admitted infringement is objective evidence of non-obviousness. *See Jones v. Hardy*, 727 F.2d 1524, 1531, 220 U.S.P.Q. 1021, 1026 (Fed.Cir.1984). The Stollers argue that the Chrysler admission is evidence of copying by Chrysler. Given the broad sweep of plaintiff's contentions here, we cannot glean from that interrogatory answer that Chrysler admitted marketing a headrest with a frictional means similar to the one disclosed in the '538 patent, and Ford specifically denies infringement.

Even though copying a claimed invention is evidence of non-obviousness, *Avia*, 853 F.2d at 1564, 7 U.S.P.Q.2d at 1554; *Pentec*, 776 F.2d at 317, 227 U.S.P.Q. at 771, the Stollers must show more than the possibility of copying by another for that copying to be significant to the ultimate issue of obviousness. *See Cable Electric*, 770 F.2d at 1028, 226 U.S.P.Q. at 889. There is no other evidence on this issue and thus no genuine issue of material fact on the question of copying.

### c. Long Felt Need

Stollers also argue that the '538 patent met a "long felt need" because the inven-

tion may be used as a safety device to prevent whiplash. The only evidence in the record on this issue contradicts this contention. The '538 patent states: "Headrests are gaining wide acceptance in this country for use in automobiles as a safety device to aid in preventing 'whiplash' injuries...." We cannot conceive of any reasonable inference, and plaintiffs have suggested none, that would support finding even a factual question on the issue of long-felt need. Any long-felt need for a headrest with no outstanding projections is irrelevant, as such elements are not elements of the claims at issue. *See supra* at 24. It is incumbent on the Stollers to introduce evidence to contradict the statement in the '538 patent for us to find a genuine factual issue. Plaintiffs have not introduced such evidence. Consequently, we cannot credit the Stollers' argument and find no long-felt need nor a factual issue on that subject.

### 5. *Were Claims 5 and 6 Obvious?*

The Stollers make two legal arguments with respect to the legal question of obviousness. First, plaintiffs contend that just because an invention appears simple, that fact does not lead to the conclusion that the invention was obvious. We firmly agree. *See Demaco*, 851 F.2d at 1390–91, 7 U.S.P.Q.2d at 1225; *Panduit*, 810 F.2d at 1572, 1 U.S.P.Q.2d at 1600. The Stollers next argue that because Ford is relying on "a large number of prior art patents" to show obviousness, the '538 patent comes with a strengthened presumption of validity. This is an incorrect statement of the law. *See In re Gorman*, 933 F.2d 982, 986, 18 U.S.P.Q.2d 1885, 1888 (Fed.Cir.1991) (criterion "not the number of references but what they would have meant to a person of ordinary skill in the field of invention").[11]

11. The Stollers cited two cases for the proposition that there is a strengthened presumption of validity where a challenger relies on a large number of prior art references. *See Bela Seating Co. v. Poloron Products, Inc.*, 297 F.Supp. 489, 160 U.S.P.Q. 646 (N.D.Ill.1968), *aff'd*, 438 F.2d 733, 168 U.S.P.Q. 548 (7th Cir.), *cert. denied*, 403 U.S. 922, 91 S.Ct. 2228, 29 L.Ed.2d 701 (1971); *Stuart W. Johnson & Co. v. Ro–Ber, Inc.*, 156 U.S.P.Q. 177 (N.D.Ill.1967). What both cases in fact say is that a defendant's reliance on eight or nine patents as evidence of invalidity,

by itself, tends to negate the argument that a patent is invalid. *See Bela*, 297 F.Supp. at 508, 160 U.S.P.Q. at 661–62; *Stuart W. Johnson*, 156 U.S.P.Q. at 183. *Gorman*, a decision of the Federal Circuit, the controlling authority for patent law, directly contradicts these cases.

*Gorman* was decided after this motion was fully briefed and plaintiffs did not bring this case to our attention. We realize that counsel requires room for case interpretation. At the same time, however, we must remind the Stol-

With these arguments disposed of, we now turn to the question of obviousness—a question of law. *See Sjolund v. Musland,* 847 F.2d 1573, 1580, 6 U.S.P.Q.2d 2020, 2026 (Fed.Cir.1988).

### a. Claim 5

Ford argues that claim 5 was obvious in view of Golden, taken with either Johnson, Gagnier or McDonald. As stated *supra,* Golden explicitly discloses all elements of claim 5, except the limitation of frictional pivotal means for adjusting the pillow solely by manipulation of the pillow. While Johnson and McDonald both disclose frictional pivotal means, and suggest combining each of such means with a headrest, a genuine issue of material fact may exist as to whether the frictional pivotal means taught by Johnson and McDonald are equivalent to such means disclosed in the '538 patent.

Left to our own devices we would have to assume that the frictional means are equivalent and that the kind of clamp disclosed in the '538 patent is an obvious clamp to use in the circumstances. Indeed, it appears to be similar to the clamps sold in hardware stores for such varying uses as attaching pipe or conduit to walls or hanging a child's swing. We cannot, however, act upon our own notions, *Panduit v. Dennison Mfg. Co.,* 774 F.2d 1082, 1092–1093 (Fed.Cir.1985), *vacated per curiam on other grounds,* 475 U.S. 809, 106 S.Ct. 1578, 89 L.Ed.2d 817 (1986), and Ford has not provided the court with record evidence on those matters upon which we are entitled to rely.

Gagnier, on the other hand, discloses a frictional and pivotal means which we found to be equivalent to that disclosed in the '538 patent. However, Gagnier does not suggest combining its frictional pivotal means with a headrest. Such a suggestion is required before a trier of fact may combine references to find a claim obvious. *See Gorman,* 933 F.2d at 986, 18 U.S.P.Q.2d at 1888. Even if we were to

say that Johnson and McDonald provide the suggestion to combine a frictional pivotal means with a headrest, we still may not combine Gagnier with Golden because we have found that a genuine issue of material fact exists as to whether Gagnier is analogous art.

In summary, the only evidence that we can consider at this time is Golden, which does not include all elements of claim 5. We think that Golden, standing alone, is insufficient to grant Ford's motion.

### b. Claim 6

Claim 6 is presumed valid, independent of the validity of claim 5. *See* 35 U.S.C. § 282; *Preemption Devices, Inc. v. Minnesota Mining and Manufacturing Co.,* 732 F.2d 903, 907, 221 U.S.P.Q. 841, 843 (Fed. Cir.1984). As claim 6 is dependent on claim 5, it contains all the limitations of claim 5. Because Ford has not been able to show that it is entitled to summary judgment due to obviousness of claim 5, we cannot find claim 6 invalid. Consequently, Ford's motion to find claim 6 invalid is denied.

### CONCLUSION

We find that Ford has not shown anticipation of claim 5. We also find that genuine issues of material facts exist, or may exist on several factual questions reflecting on the issue of obviousness. Consequently, Ford has not shown that either claim 5 or claim 6 was invalid due to obviousness. Ford's motion for summary judgment is denied.

---

lers' counsel of their "'continuing duty to inform the [c]ourt of any development which may conceivably affect the outcome'" of the case. *See Board of License Commissioners v. Pastore,*

469 U.S. 238, 240, 105 S.Ct. 685, 686, 83 L.Ed.2d 618 (1985) (*per curiam*) (quoting *Fusari v. Steinberg,* 419 U.S. 379, 391, 95 S.Ct. 533, 540, 42 L.Ed.2d 521 (1975) (Burger, C.J., concurring)).